1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| MARVIN and LAURA HORNE, *et al.*, | 1:08-CV-00402 OWW SMS |
|---|---|
| Plaintiffs, | MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO DISMISS. |
| v. | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiffs are individuals and entities that do business in the raisin industry.  (First Amended Complaint ("FAC"), Doc. 13, ¶¶ 1-7.)  In March 2007, Plaintiffs filed an administrative petition before the Secretary of Agriculture pursuant to 7 U.S.C. § 608c(15)(A), seeking to modify or exempt Plaintiffs from the Raisin Marketing Order, which regulates the handling of raisins in California, issued under the Agricultural Marketing Agreement Act ("AMAA").  (FAC ¶¶ 9, 11 & Ex. 4.)  The U.S. Department of Agriculture ("USDA" or "Defendant") moved to dismiss the administrative petition, asserting that Plaintiffs lacked standing.  (FAC ¶9.)  An Administrative Law Judge ("ALJ") denied USDA's motion to dismiss.  *Id*.  On February 4, 2008, a Judicial Officer ("JO") vacated the ALJ's decision and dismissed the petition.  *Id*.  Plaintiffs allege that their counsel "did not

1

1    receive said 'decision' until March 4, 2008." *Id.*

2       Before the court for decision is USDA's motion to dismiss

3 for lack of subject matter jurisdiction under Federal Rule of

4 Civil Procedure 12(b)(1). USDA argues that this court lacks

5 jurisdiction over Plaintiffs' complaint, filed March 18, 2008,

6 because it was not "filed within twenty days following the date

7 of entry" of the *JO*'s February 4, 2008 ruling as required by the

8 AMAA. (Doc. 15-2.) Plaintiffs concede that their complaint was

9 not filed within the twenty day statutory time period, but assert

10 that it was timely filed when considered in the context of due

11 process. (Doc. 19 at 4.) Alternatively, Plaintiffs allege that

12 the district court has jurisdiction pursuant to the

13 Administrative Procedure Act ("APA"), 5 U.S.C. § 702, *et seq.*,

14 and/or the Tucker Act, 28 U.S.C. § 1346. *(Id.)*

15

16                 II. <u>STANDARD DECISION</u>.

17       Rule 12(b)(1) of the Federal Rules of Civil Procedure allows

18 a motion to dismiss for lack of subject matter jurisdiction. It

19 is a fundamental precept that federal courts are courts of

20 limited jurisdiction. Limits upon federal jurisdiction must not

21 be disregarded or evaded. *Owen Equip. & Erection Co. v. Kroger*,

22 437 U.S. 365, 374 (1978); *United States v. Bravo-Diaz*, 312 F.3d

23 995, 997 (9th Cir. 2002) ("It is fundamental to our system of

24 government that a court of the United States may not grant relief

25 absent a constitutional or valid statutory grant of

26 jurisdiction."). The plaintiff has the burden to establish that

27 subject matter jurisdiction is proper. *Kokkonen v. Guardian Life*

28 *Ins. Co.*, 511 U.S. 375, 377 (1994).

1     A challenge to jurisdiction under Rule 12(b)(1) "can be
2 either facial, confining the inquiry to allegations in the
3 complaint, or factual, permitting the court to look beyond the
4 complaint." *Savage v. Glendale Union High School*, 343 F.3d 1036,
5 1039-40 n.2 (9th Cir. 2003).  When a defendant challenges
6 jurisdiction <u>facially</u>, all material allegations in the complaint
7 are assumed true, and the question for the court is whether the
8 lack of federal jurisdiction appears from the face of the
9 pleading itself.  *See Thornhill Publishing Co. v. General
10 Telephone Electronics*, 594 F.2d 730, 733 (9th Cir. 1979)

11     In a factual Rule 12(b)(1) challenge, "the district court is
12 not restricted to the face of the pleadings, but may review any
13 evidence, such as affidavits and testimony, to resolve factual
14 disputes concerning the existence of jurisdiction." *McCarthy v.
15 United States*, 850 F.2d 558, 560 (9th Cir. 1988).  The district
16 court need not presume the truthfulness of the plaintiff's
17 allegations.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

18     In order for suit to lie against the United States and its
19 agencies, officers and employees, there must be an express waiver
20 of sovereign immunity.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).
21 The terms of the consent to suit define a court's jurisdiction.
22 *United States v. Sherwood*, 312 U.S. 584, 586-87 (1940).  "[T]he
23 Government's consent to be sued must be construed strictly in
24 favor of the sovereign." *United States v. Nordic Village, Inc.*,
25 503 U.S. 30, 34 (1992) (citations and internal quotation marks
26 omitted).

27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.   **DISCUSSION**

A.   <u>The Statutory Time Limit</u>.

Plaintiffs bring this action under 7 U.S.C. § 608c(15)(B), which provides the mechanism for judicial review of a ruling on a petition to modify a marketing order:

> The District Courts of the United States ...
> in any district in which such handler is an
> inhabitant, or has his principal place of
> business, are hereby vested with jurisdiction
> in equity to review such ruling, <u>provided a
> bill in equity for that purpose is filed
> within twenty days from the date of the entry
> of such ruling</u>. Service of process in such
> proceedings may be had upon the Secretary by
> delivering to him a copy of the bill of
> complaint. If the court determines that such
> ruling is not in accordance with law, it
> shall remand such proceedings to the
> Secretary with directions either (1) to make
> such ruling as the court shall determine to
> be in accordance with law, or (2) to take
> such further proceedings as, in its opinion,
> the law requires....

7 U.S.C. § 608c(15)(B) (emphasis added).

Plaintiffs concede that the JO's ruling, from which they seek review, issued and was entered into the record of the case on February 4, 2008.  (FAC ¶¶ 9, 16 & Ex. 2.)  This federal court action was filed on March 18, 2008, forty-three days after entry of the JO's ruling.  (*See* Doc. 1.)

Plaintiffs argue that the twenty-day time limit for seeking judicial review should be computed not from the date of entry of the ruling, as the statute provides, but from some later date, either the time that the hearing clerk mailed the ruling that eventually reached Plaintiffs' counsel on March 4, 2008, or from the date Plaintiffs actually received it.  (*See* FAC ¶9.)

The USDA maintains that the hearing clerk posted the JO's

4

1  decision by certified mail addressed to Plaintiffs' counsel on

2  February 4, 2008, the same day the decision was entered.

3  (Declaration of Kenneth H. Vail ("Vail Decl."), (Doc. 15-3, ¶¶ 1-

4  2, 4.)  USDA asserts that the certified mailing was unclaimed by

5  Plaintiffs' counsel, returned to the hearing clerk's office on

6  February 27, 2008, and then re-posted by regular mail.  (*Id.* at

7  ¶¶ 3-4.)[1]

8      Plaintiffs allege that the hearing clerk "did not post-mark

9  or mail the Judicial Officer's (JO's) decision to Plaintiffs'

11      [1]    Mr. Vail is the Assistant General Counsel of USDA's
12  Marketing Division.  Attached to his declaration are a cover
    letter from the Office of the Hearing Clerk to Plaintiffs'
13  counsel, and various mail material receipts.  Plaintiffs objects
    to his declaration on the ground that he could not possibly have
14  had personal knowledge of sending and/or receiving any letters
    from the Hearing Clerk's Office, because he does not work in that
15  office.  (Doc. 22.)  Defendant correctly responds that this
    objection is not relevant, as Mr. Vail does not assert personal
16  knowledge of the underlying events.  Rather, he certifies that
    each of the attached copies is a true, correct, and compared copy
17  of a document in the official custody of the Secretary of
    Agriculture, admissible under Federal Rule of Evidence 902(4),
18  which provides that extrinsic evidence of authenticity is not
    required with respect to "[a] copy of an official record or
19  report or entry ... certified as correct by the custodian or
    other person authorized to make the certification."  (Doc. 23-2.)
20  *See also* Fed. R. Evid. 1005 (permitting the contents of an
    official record, or of a document authorized to be recorded or
21  filed, "by copy, certified as correct in accordance with rule
    902." ); Fed. R. Evid. 803(8) (creating hearsay exception for
22  "[r]ecords, reports, statements, or data compilations, in any
    form, of public offices or agencies, setting forth [] the
23  activities of the office or agency ....").  However, Mr. Vail
    does not claim to be the custodian of records for these
24  documents.  Therefore, he may not invoke any of these exceptions
    to the hearsay prohibition.  Plaintiffs' objection is SUSTAINED.
25  For the purposes of this decision, it will be assumed that the
26  notice was not timely sent.

5

1  counsel until February 28, 2008, twenty-four (24) days after the

2  JO's decision." (FAC at ¶9.) Plaintiffs counsel declares, under

3  penalty of perjury, that he has been representing growers and/or

4  shippers of agricultural products before the USDA for more than

5  twenty years. (Declaration of Brian C. Leighton ("Leighton

6  Decl."), Doc. 20, at ¶3.) He states that he has significant

7  experience dealing with the USDA Hearing Clerk's Office, and that

8  Office has mailed to him, by regular mail or certified mail,

9  pleadings and court rulings from USDA judges. (*Id.*) On numerous

10 occasions, the Hearing Clerk's Office sent decisions to him via

11 facsimile. (*Id.*) He complains, generally, that the USDA Hearing

12 Clerk's Office is "antiquated" and has no system that permits

13 litigants to electronically check the status of pending

14 petitions, nor is there any way to receive electronic notice of

15 decisions or filings. (*Id.* at ¶5.)

16     With respect to the JO decision at issue here, Mr. Leighton

17 asserts that the certified mail allegedly sent on February 4,

18 2008 never arrived at his office. (*Id.* at ¶6.)[2] Instead, Mr.

19 Leighton first received the decision, bearing a post mark of

20 February 28, 2008, by regular mail on March 4, 2008. (*Id.*)

21

22     [2]     Mr. Leighton also declares that the certified letter
   never made it to the Clovis Post Office that serves his law
23 office. In support of this assertion, Mr. Leighton explains that
   he "personally visited the main Post Office for the City of
24 Clovis ... and spoke with the Postmaster who provided to me [a]
   document attached [as] Exhibit A ... showing that at no time did
25 USDA's certified letter ever reach the Clovis Post office ...."
   (Doc. 20 at ¶8.) USDA correctly objects to this portion of Mr.
26 Leighton's declaration on the ground that it is hearsay for the
   truth of the matters allegedly contained within the Postmaster's
27 explanation. (Doc. 23-3 at ¶1.) USDA's objection is SUSTAINED.

28

1   However, the version of the decision he received on March 4 had

2   been sliced into several pieces.[3]  (*Id.*)

3       But, USDA correctly argues that the method, or even the

4   success, of service is irrelevant.  The time to file this action

5   commenced upon entry of the JO's ruling, and this action is

6   therefore untimely.  The only case to have interpreted the

7   operative language in the AMAA is *Willow Crossing Dairy Farm,*

8   *Inc. v. Hardin*, 327 F. Supp. 798 (W.D. Pa. 1970), in which the

9   plaintiff similarly sought judicial review under 7 U.S.C. §

10  608c(15)(B).  In response to a motion to dismiss for lack of

11  jurisdiction on the grounds that the action was not timely filed,

12  plaintiff's counsel argued that the twenty-day period should run

13  from the date he received notice of the ruling, not the date the

14  ruling was entered.  The district court rejected the argument,

15  reasoning:

16              Where statutory jurisdiction is conferred on a district
            court to hear appeals from an administrative agency,
17          such action is predicated on an individual's pursuing
            his remedies within the bounds prescribed in the
18          applicable statute. [Citation] Thus, in this case,
            where Congress mandated specific jurisdictional
19          requirements and especially provided the time in which
            an appeal was to be filed, the question of whether or
20          not the district court jurisdiction is properly invoked
            depends upon a resolution of the meaning of the term
21          "entry of such ruling," as embodied in the
            Congressional intent.
22
23              It does not appear that our courts have been called
            upon to interpret this phrase in relation to the
24
    _____

25          [3]    In his declaration, Mr. Leighton explains that the
26  letter was "folded twice (length wise) which made three equal
    parts, and was cut virtually all the way through the Clerk's
27  cover letter and the decision at the two folds."  (Leighton Decl.
    at ¶6.)  Mr. Leighton elsewhere describes the letter's state as
28  having been "shredded."  (Doc. 19 at 6.)

                                    7

Agricultural Adjustment Act, under which this suit is brought. Since no peculiar interpretation has been placed upon the term "entry," it will be interpreted as it is normally employed. "The word is frequently used, particularly in commercial law and in practice, as referring to the act of committing to writing, or of recording in a book ... and has been defined as meaning the act of making or entering a record, or a setting down in writing of particulars ...." 30 C.J.S. Entry page 724. "Entry," or entering, is ordinarily synonymous with recording. It connotes a greater duty than, or additional to, that preservation which is the essence of filing." The Washington, 16 F.2d 206, 208 (C.A. 2, 1926). <u>It is the clerical procedure of recording.</u> *Neely v. Merchants Trust Co. of Red Bank*, N.J., 110 F.2d 525 (C.A. 3, 1970).

<u>The Act does not specify that the time to perfect an appeal is to run from the time of receipt of the ruling. But since it does clearly state that the twenty day period runs from the entry of that ruling which was on September 2, 1970, it is obvious according to the Act's tenor that the instant complaint was not timely filed in accordance with Congressional intent. I am accordingly precluded from gaining jurisdiction over the subject matter, and the defendant's motion to dismiss the complaint must be granted.</u>

*Id.* at 800 (emphasis added)(internal citations omitted).

Similar language contained within the Longshore and Harbor Workers' Compensation Act ("LHWCA") providing for an appeal from the Benefits Review Board of the Department of Labor was similarly interpreted by the Fourth Circuit. *See Mining Energy, Inc. v. Director, Office of Workers' Compensation Programs*, 391 F.3d 571 (4th Cir. 2004). The LHWCA provides that a petition for review must be filed "within sixty days following the <u>issuance</u> of [the] Board['s] order ... 33 U.S.C. 921(c)." *Id.* (emphasis added). The court held that it lacked jurisdiction to consider the petition because the time period began to run when the decision was issued and filed by the Board's clerk, not when the employer actually received a copy of it. *Id.* at 576. *See also Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 44 (2d

Cir. 1976) (holding that petition for review of Benefits Review Board ruling must be dismissed as untimely, even if hearing clerk made error in mailing notice to incorrect party).

The Ninth Circuit applied similar reasoning in a case involving LHWCA's sixty-day filing deadline. *Stevedoring Servs. of Am. v. Director, Office of Workers' Comp. Programs*, 29 F.3d 513, 516 (9th Cir. 1994). In *Stevedoring*, the Ninth Circuit found that the "sixty-day filing period is a jurisdictional requirement," referencing the Second Circuit's decision in *Dellaventura*:

> In *Dellaventura*, the Clerk of the Board sent a copy of the Board's decision to the attorney for the employer rather than to the employer. 544 F.2d at 43. The employer filed its notice of appeal after the expiration of the 60-day time period provided for in § 921(c). *Id*. The employer argued that the Board's decision was not "issued" until "a copy of [it] shall be sent by certified mail or served personally on all parties to the appeal and the Director" as required by the regulations. *Id*. (internal quotation omitted). The court noted that "[t]he rule does not say when this [notice] should be done." *Id*. It held "[w]e see no reason not to read 33 U.S.C. § 921(c) as meaning what it says. The policy requiring that appeals be timely taken is so strong that ministerial failures by a clerk cannot be allowed to overcome it." *Id*. at 44 (citations omitted). The appeal was dismissed as untimely. *Id*.
>
> We agree with this analysis. "Issuance" in § 921(c) means filed with the Clerk of the Board, nothing more.

*Id*.[4]

---

[4] USDA also points out that "[w]hen Congress has elected to require actual notice of final administrative action to commence accrual of limitations periods, it has explicitly done so." *Kentucky ex rel. Cabinet for Human Resources v. Brock*, 845 F.2d 117, 121 (6th Cir. 1988). Defendant points to many examples. *See, e.g.*, 42 U.S.C. § 2000e-16(c) ("within 30 days of receipt of notice of final action taken by a department, agency, or unit ... an employee ... may file a civil action ...."); 5

1    Although the language applicable in this case requires

2  filing of an appeal "within twenty days from the date of the

3  entry" of the underlying ruling, as opposed to LHWCA's language

4  requiring filing within a set period of time following "issuance"

5  of the ruling, *Willow Crossing* persuasively reasons why the

6  result here should be the same as in the LHWCA cases.   The

7  "entry" of a ruling is the clerical procedure of filing, nothing

8  more.   *Willow Crossing*, 327 F. Supp. at 800.

9

10              **B.   Plaintiffs' Due Process Clause Argument**.

11    Plaintiffs ask the Court to carve out an exception to the

12  statutory deadline to find that it was timely filed "when

13  considered in the context of Due Process."   Plaintiff

14  acknowledges that the Due Process Clause, alone, does not

15  guarantee the right to appellate review, *Mining Energy*, 391 F.3d

16  at 576, but cites *M.L.B. v. S.J.L.*, 519 U.S. 102, 110-113

17  (1996), for the proposition that once appellate review is

18  provided by statute, Due Process is required.   Specifically,

19  plaintiff asserts that Due Process in this case would require

20  "overnight delivery notice, fax notice ([the] cheapest, most

21  efficient, quickest and far less time consuming[)], or something

22  much more than what USDA did provide in this case."   (Doc. 19 at

23  _____

24  U.S.C. § 7703(b)(1) (petition to review administrative Order
    "must be filed within 60 days after the date the petitioner
25  received notice of the final order or decision"); 20 U.S.C. §
    1416(e)(8) (state may seek review of federal agencies' action
26  "not later than 60 days after notice of such action"); 29 U.S.C.
    § 667 (state may obtain judicial review of decision regarding an
27  occupational health plan by filing action "within thirty days
    following receipt of notice of such decision").
28

**10**

7.)

Plaintiffs citation to *M.L.B. v S.L.J.* is misplaced.   In that case, the Supreme Court reviewed the question of whether a State may condition appeals from trial court decrees terminating parental rights on the affected parent's ability to pay record preparation fees.   The Court acknowledged that "if a full and fair trial on the merits is provided, the due process clause of the Fourteenth Amendment does not require a state to provide appellate review."   519 U.S. at 114.   However, once an appeal is afforded, "it cannot be granted to some litigants and capriciously and arbitrarily denied to others without violating the equal protection clause."   *Id.* (emphasis added.) Specifically, the Court found that "[c]hoices about marriage, family life, and the upbringing of children are among the associational rights this Court has ranked as 'of basic importance to our society,'" and held that the state could not deny M.L.B., because of her inability to pay, appellate review of the ruling that she was unfit to remain a parent.   *Id.* at 107, 116.   The Court further noted that this was among the "narrow category of civil cases in which the State must provide access to its judicial process without regard to a party's ability to pay court fees."   *Id.* at 113.

There is absolutely no parallel between the circumstances in this case and those in *M.L.B.*   The Fourth Circuit's Mining Energy decision, 391 F.3d 571, issued almost ten years after *M.L.B.* explicitly rejected Plaintiffs argument, finding

> [no] constitutional reason why [the statute
> and regulation] cannot be enforced as they
> are written.   While Mining Energy contends

1                   that permitting the sixty-day window for
                  judicial review to expire when there has been

2                   a lack of actual notice of the Board's
                  decision contravenes constitutional due

3                   process requirements, that contention is
                  without merit and must be rejected. It is

4                   well-established that the due process clause,
                  alone, guarantees no right to appellate

5                   review.

6 *Id.* at 576.

7           C.     <u>Little Tucker Act And Administrative Procedure</u>
             <u>Act</u>.

8

9      In the FAC, Plaintiffs alternatively allege that the

10 district court has jurisdiction under the APA, 5 U.S.C. §§ 702 *et*

*seq.*, and/or under the Little Tucker Act, 28 U.S.C. § 1346.

11

12      Plaintiffs' cannot establish independent jurisdiction under

the APA. Although 5 U.S.C. § 702 waives the government's

13 sovereign immunity for claims seeking non-monetary relief from

14 administrative agency action, section 702 specifically limits the

15 government's waiver of sovereign immunity by denying the courts

16 "authority to grant relief if any other statute that grants

17 consent to suit expressly or impliedly forbids the relief which

18 is sought." 5 U.S.C. § 702. Here, the statute under which

19 Plaintiffs bring this action, 7 U.S.C. § 608c(15)(A), precludes

20 jurisdiction (and judicial relief) if the action is not timely

21 filed. *See Berman v. United States*, 264 F.3d 16, 21 (1st Cir.

22 2001) (holding that where statute required petition to quash IRS

23 summons be filed within twenty days after service of summons,

24 plaintiff could not avoid jurisdictional limitation of statute by

25 asserting general APA jurisdiction under 5 U.S.C. § 702); *see*

26 *also Block v. North Dakota*, 461 U.S. 273, 286 n.22 (1983) (where

27 Quiet Title Act required suit to be filed within a specified

28

1    time, 5 U.S.C. § 702 provided no waiver of the deadline; Section

2    702 "provides no authority to grant relief 'when Congress has

3    dealt in particularity with a claim and [has] intended a

4    specified remedy to be the exclusive remedy.'").  *Id.*

5

6                    IV.   <u>CONCLUSION</u>

7       For the reasons set forth above, Defendant's motion to

8    dismiss is GRANTED.   This result may be harsh, but the district

9    court is not in a position to revise the scope of the applicable

10    sovereign immunity waiver and the statutory language Congress

11    adopted.  Plaintiffs' counsel is familiar with USDA procedures,

12    the twenty day rule, and that electronic service is not

13    available.  Although it is burdensome, it was incumbent upon

14    counsel to ascertain the date of entry of the disputed decision.

15

16    **IT IS SO ORDERED.**

17    **Dated:   November 10, 2008**         **/s/ Oliver W. Wanger**
                                   **UNITED STATES DISTRICT JUDGE**

18

19

20

21

22

23

24

25

26

27

28